## CAPE COD TIMES *VS.* SHERIFF OF BARNSTABLE COUNTY.

Barnstable. November 2, 2004. - March 8, 2005.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Public Records. Sheriff. Statute,* Construction. *Privacy.*

In a civil action brought by a newspaper seeking to inspect records in posses-
sion of the defendant sheriff regarding the names and addresses of reserve
deputy sheriffs that the sheriff and his predecessors had appointed, the
judge erred in granting summary judgment in favor of the sheriff, where
the records requested were public records that had been made or received
by a public official, the sheriff, within the meaning of G. L. c. 4, § 7,
Twenty-sixth, and where no exemption to the statutory definition of public
records or other provision of law insulated the records from inspection.
[591-596]

CIVIL ACTION commenced in the Superior Court Department on
March 11, 2003.

The case was heard by *David A. McLaughlin,* J., on motions
for summary judgment.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Thomas P. Crotty* for the plaintiff.

*Matthew M. Murphy* for the defendant.

*Edward F. O'Brien, Jr.,* for Massachusetts Sheriff's Associa-
tion, amicus curiae, submitted a brief.

MARSHALL, C.J. We consider in this case whether G. L. c. 66,
§ 10, the public records law,[1] requires that the elected sheriff of
Barnstable County permit the Cape Cod Times, a division of
Ottaway Newspapers, Inc. (newspaper), to inspect records of

---

[1]General Laws c. 66, § 10, provides, in pertinent part: "Every person hav-
ing custody of any public record, as defined in clause Twenty-sixth of section
seven of chapter four, shall, at reasonable times and without unreasonable
delay, permit it . . . to be inspected and examined by any person . . . ."

the names and addresses of individuals appointed to serve as "reserve deputy sheriffs."[2] The sheriff has refused any such inspection, asserting that the records were created in a "personal" capacity, and are not "public records" subject to G. L. c. 66, § 10. The sheriff also contends that the requested records are those of the Barnstable County Deputy Sheriffs Association, a private entity not subject to the public records statute. Alternatively, the sheriff argues that the records are exempt from inspection because their release would "constitute an unwarranted invasion of privacy," in violation of G. L. c. 4, § 7, Twenty-sixth (c),[3] or other provision of law. A judge in the Superior Court determined that the records were those of the association and not public. On cross motions, he granted summary judgment for the sheriff. The newspaper appealed, and we transferred the case here on our own motion.

We conclude that the records requested were "made or received" by a public official, the sheriff, as those terms are used in G. L. c. 4, § 7, Twenty-sixth, and that no exemption to the statutory definition of public records or other provision of law insulates the records from inspection.

1. *Background.* The parties do not contest the essential facts. The office of Barnstable County sheriff is a public, elected position. G. L. c. 37, § 1.[4] The current sheriff, James M. Cummings, first took office in January of 1999.

In the past, Barnstable County sheriffs have appointed private individuals to serve as "honorary" deputy sheriffs. According to

---

[2] We acknowledge the amicus brief filed by the Massachusetts Sheriff's Association.

[3] General Laws c. 4, § 7, Twenty-sixth, which we recite and discuss below, defines a "public record," exempting certain classes of materials from inspection and examination.

[4] General Laws c. 37, § 1, provides, in pertinent part: "A sheriff shall be elected in each county . . . ." For most of the Commonwealth's history, sheriffs have been employees of their respective counties. Since the enactment of G. L. c. 34B, inserted by St. 1999, c. 127, § 53, several counties have been abolished as government entities. The sheriffs of those counties are now employees of the Commonwealth. See G. L. c. 34B, § 12. Barnstable County retains its ancient status, and the salaries of the sheriff and his staff are paid by Barnstable County. G. L. c. 37, § 17.

the special sheriff of Barnstable County,[5] honorary deputy sheriffs were sworn in as deputy sheriffs, ostensibly engaged in no law enforcement functions, and were not employees of the sheriff's office.[6]

Shortly after he took office, Sheriff Cummings largely abolished this practice.[7] In its place he instituted a system of appointing "reserve deputy sheriffs." The sheriff contends that his current practice differentiates more clearly than in the past between deputy sheriffs who are employees of Barnstable County or otherwise have law enforcement powers, and private citizens without law enforcement powers, now designated "reserve deputy sheriffs."[8]

The sheriff has appointed more than one hundred reserve deputy sheriffs. A letter, printed on the sheriff's official letterhead and sent as part of an application package, recites the responsibilities of reserve deputy sheriffs: they have "all the powers, duties, authority, responsibility and honors of a Deputy Sheriff when called upon by the High Sheriff or the Special Sheriff, as provided for by [G. L. c. 37, § 13, and G. L. c. 269, § 1]."[9]

---

[5]General Laws c. 37, § 4, provides, in pertinent part, that a sheriff "shall appoint a special sheriff [who] shall have the authority of a deputy sheriff." General Laws c. 37, § 5, provides, in pertinent part: "If, by reason of illness, absence, interest, or otherwise, the sheriff is unable to perform his official duties, they shall be performed by the special sheriff . . . ."

[6]General Laws c. 37, § 3, provides: "A sheriff may appoint deputies, who shall be sworn before performing any official act." Pursuant to his authority under this section, the sheriff has deputized many employees and certain nonemployees, such as civil process servers and members of other law enforcement agencies.

[7]The special sheriff noted during his deposition that Sheriff Cummings has on a few occasions appointed an individual, such as a visiting foreign dignitary, as an "honorary" deputy sheriff. Sheriff Cummings "grandfathered" many of the nonemployee deputy sheriffs previously appointed. These individuals appear to retain the title "deputy sheriff."

[8]The sheriff maintains that reserve deputy sheriffs are no longer officially sworn as deputy sheriffs. See note 6, *supra*. As characterized by the sheriff, reserve deputy sheriffs have "no police powers," and their "status" is "honorary" and not indicative of any "civil or public office." We need not decide, as the sheriff urges that we do, whether the reserve deputy sheriffs are holders of public office. Our holding rests on a conclusion that the sheriff, in appointing reserve deputy sheriffs, exercises a power of his public office.

[9]General Laws c. 37, § 13, provides, in pertinent part, that sheriffs "may

The appointment of reserve deputy sheriffs is directed by the sheriff and his subordinates. A potential reserve deputy sheriff completes an application, which he or she mails to the sheriff's secretary, an employee of the sheriff's office. The application is then forwarded to the special sheriff, an employee of Barnstable County and the sheriff's highest ranking subordinate. See G. L. c. 37, §§ 4, 5, and note 5, *supra.* Applicants authorize "the Sheriff of Barnstable County, Massachusetts" to conduct "a background investigation" and the special sheriff directs employees to use the resources of the office to perform such background checks. After the completion of a background check, the special sheriff and two officers of the association review the application before the special sheriff makes a recommendation to the sheriff. The final decision to appoint an applicant is made by the sheriff.

Each successful reserve deputy sheriff candidate is notified by the sheriff in a letter bearing the sheriff's letterhead. Each is informed that he or she "takes an oath of public trust." The successful applicant also is given a photographic identification card, made by the sheriff's personnel director and paid for by the sheriff's office, bearing the title "reserve deputy sheriff." The reserve deputy sheriff is informed that he or she may purchase at a police supply store a badge that identifies the holder as a deputy sheriff.[10] The sheriff administers an oath to each reserve deputy sheriff at what is characterized as a "ceremonial gesture without legal consequence."[11]

We discuss briefly some aspects of the Barnstable County Deputy Sheriffs Association. Deputy sheriffs employed by Barnstable County are members of the association, as were nonemployee "honorary" deputy sheriffs appointed in the past. The

require suitable aid in the execution of their office." General Laws c. 269, § 1, provides, in pertinent part, that, in encountering an unlawful assembly, "the sheriff of the county and his deputies shall go among the persons so assembled . . . and in the name of the commonwealth command all persons so assembled immediately and peaceably to disperse."

[10]The badge is slightly smaller than, but otherwise similar to, those of deputy sheriffs employed by Barnstable County.

[11]The record does not evidence the content of this ceremony or the particulars of the oath there taken. The sheriff testified that the oath includes language indicating that reserve deputy sheriffs have no official "powers until called upon by the sheriff." See also note 6, *supra.*

association also admits to membership reserve deputy sheriffs and "resworn" volunteer deputy sheriffs. According to its articles of organization, the association's purpose is "[t]o support all non-political programs and interests of the Sheriff's Office of Barnstable County and of the Association of Deputy Sheriffs." One of the association's functions is to support the operation of the sheriff's "youth ranch."[12] The sheriff is an ex officio member but not an officer or director of the association. The special sheriff is vice-president of the association.

2. *Discussion.* The newspaper commenced this action when the sheriff refused to permit the inspection of "those records in [his] possession regarding reserve deputies appointed by [him] or any predecessor in [his] office."[13] It is not disputed that records "made or received" by the sheriff, an elected officer and employee of Barnstable County, a political subdivision of the Commonwealth, are subject to the public records laws. It is not disputed that the records requested by the newspaper are located in the sheriff's office, in a file maintained by, and under the control of, a public employee, the special sheriff. The sole question is whether the sheriff may nevertheless refuse to allow inspection and examination of these records on his assertion that the records are "private." In the circumstances of this case, that claim is untenable.

The public records law, G. L. c. 66, § 10, requires that every person permit the inspection and examination of any public records in his or her "custody." See note 1, *supra.* General Laws c. 4, § 7, Twenty-sixth, in turn, defines "[p]ublic records" as all materials "made or received by any officer or employee" of any "political subdivision" of the Commonwealth unless such materials fall within an exemption specified in that they are:

---

[12]The "youth ranch" has been operated for many years by at least one former sheriff and continues in operation by the current sheriff. It is located on land leased by the sheriff's office from the town of Barnstable. The director of the ranch is an employee of the sheriff's office. Sheriff Cummings testified that while previously the ranch was run "entirely" by the association, since he assumed office, he has "brought the day-to-day operations" of the ranch "under the sheriff's office."

[13]In a postargument submission, the newspaper limited its request, and now seeks to inspect only documents evidencing the names and addresses of reserve deputy sheriffs. The newspaper never had sought to inspect any records in the possession of the association.

"(*a*) specifically or by necessary implication exempted from disclosure by statute; . . . (*c*) . . . relat[ed] to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy; . . . (*e*) notebooks and other materials prepared by an employee of the commonwealth which are personal to him and not maintained as part of the files of the governmental unit."[14]

The Legislature's definition of public records "manifests a legislative intent to provide broad public access to government documents subject only to limited exemptions." *General Elec. Co.* v. *Department of Envt'l Protection*, 429 Mass. 798, 802 (1999). The statute provides the operative standard: in any court proceeding "there shall be a presumption that the record sought is public, and the burden shall be upon the custodian to prove with specificity the exemption which applies." G. L. c. 66, § 10 (*c*). Against this presumption of production, we address in turn the sheriff's assertion that the records were created in his (and the special sheriff's) "personal" capacities, and his claims that the records are the property of the association.

The power to appoint reserve deputy sheriffs inheres in the office of the Barnstable County sheriff. When a public officer's actions are possible only by virtue of the public office he or she holds, they are official acts, and the evidence here is overwhelming that, when he appoints reserve deputy sheriffs, the sheriff acts as a public official and not as a private individual. Reserve deputy sheriffs "serve at the pleasure of the Sheriff"; they do not serve at the pleasure of private Citizen Cummings. Reserve

[14]The statute contains additional exceptions, which the sheriff does not contend apply to the records requested by the newspaper in this case, and any such claims are therefore waived. These include certain records relating "solely to internal personnel rules and practices of the government unit"; certain records of "inter-agency or intra-agency memoranda or letters relating to policy positions"; certain law enforcement investigatory materials; certain trade secrets; certain early bids on government contracts; certain appraisals of real property; names and addresses of persons referred to in applications to carry or possess firearms; certain test questions and answers; certain health care services contracts; certain blueprints and diagrams; the addresses and telephone numbers of certain Commonwealth employees; and the names, addresses, or telephone number of family members of certain Commonwealth employees. G. L. c. 4, § 7, Twenty-sixth, (*b*), (*d*), and (*f*) through (*p*), as amended through St. 2004, c. 149, § 8.

deputy sheriffs agree "to obey the lawful commands of the Sheriff," not the commands of Citizen Cummings. Cummings will have no authority to appoint reserve deputy sheriffs after he leaves office. Rather reserve deputy sheriffs (if any) will serve at the pleasure of his successors. The "real party in interest" here "is the governmental entity" of the Barnstable County sheriff, not Cummings, "the named official." See *Hafer* v. *Melo*, 502 U.S. 21, 25 (1991).[15]

The sheriff argues that the resources utilized in the process of appointing reserve deputy sheriffs are largely those of the association, that the special sheriff's involvement in the appointment process is without compensation, and that the expenditure of resources of the sheriff's office in the process, such as reviewing the criminal history of applicants, is minimal, and no more than is customarily afforded to other private associations.[16] The argument misses the point. Whatever the scope of his use of public resources, the fact remains that the sheriff appoints reserve deputy sheriffs solely by virtue of the public office he holds. The creation of the records was undertaken, supervised, and implemented by the sheriff acting at all times as a public official. The records were therefore "made or received," G. L. c. 4, § 7, Twenty-sixth, and must be produced for inspection and examination, unless subject to an applicable exemption.

As to the argument that the records sought by the newspaper are those of the Barnstable County Deputy Sheriffs Association, it is noteworthy that the association does not appoint reserve deputy sheriffs. That appointment as a reserve deputy sheriff automatically constitutes membership in an association does not detract from the capacity in which the sheriff acts. The newspaper seeks nothing from the association. It did not request from the association a list of the association's members. It

[15]The sheriff argues that the public records laws apply only to documents created by an individual while acting in an "official capacity." The term "official capacity" stems from the form of pleading in Federal courts that allows the successors to vacated public offices to be substituted for their predecessors. *Hafer* v. *Melo*, 502 U.S. 21, 25 (1991). In this case the evidence is clear that the sheriff acts in his official capacity when appointing reserve deputy sheriffs.

[16]As it is not relevant to our determination, we do not consider whether the sheriff may use, as he claims, the resources of his office to further the interests of a private association without violating applicable law.

requested solely from the sheriff the names and addresses of reserve deputy sheriffs.

That reserve deputy sheriffs serve as "volunteers," and are not employees of Barnstable County is also of no import. The public records laws allow inspection of records of the names and addresses of private persons with far less connection to a public official than evidenced in this case. *Attorney Gen.* v. *Collector of Lynn*, 377 Mass. 151 (1979) (holding that records of tax delinquents are subject to the public records laws). Records of appointments made by a public official as a consequence of his or her official status cannot be withheld from inspection and examination on an assertion that those appointments are "private." See *Worcester Telegram & Gazette Corp.* v. *Chief of Police of Worcester*, 436 Mass. 378, 385 (2002) ("Allowing [an official] to decide unilaterally, without any oversight, what documents are subject to disclosure and what documents are exempt is wholly inconsistent with the purpose of G. L. c. 66, § 10").

Our conclusion that the sheriff's records concerning the appointment of reserve deputy sheriffs are public records does not end our inquiry, for we must resolve whether any exceptions to G. L. c. 4, § 7, Twenty-sixth, exclude the names and addresses of reserve deputy sheriffs from the definition of "public records," and whether allowing inspection of such records would otherwise constitute an unconstitutional or other unlawful invasion of privacy.

First, the sheriff argues that the records "do not serve any public purpose or function" and "are personal to him and not maintained as part of the files of the governmental unit," as exempted under G. L. c. 4, § 7, Twenty-sixth (*e*). For substantially the same reasons we discussed earlier, subclause (*e*) does not apply. Materials pertaining to the appointment and supervision of reserve deputy sheriffs are not "personal" to the sheriff or any of his employees, but inhere in the office of sheriff, regardless of which individual holds the position.

The sheriff further contends that disclosure of the names and addresses of reserve deputy sheriffs would "constitute an unwarranted invasion of privacy." G. L. c. 4, § 7, Twenty-Sixth (*c*). The argument has no merit. We have held that subclause (*c*)

precludes inspection only in cases where "disclosure would publicize 'intimate details' of 'a highly personal nature.' " *Attorney Gen.* v. *Assistant Comm'r of the Real Prop. Dep't of Boston,* 380 Mass. 623, 625-626 (1980), quoting *Attorney Gen.* v. *Collector of Lynn, supra* at 157. Names and addresses of adults are not " 'intimate details' of a 'highly personal nature.' " *Pottle* v. *School Comm. of Braintree,* 395 Mass. 861, 865 (1985), quoting *Hastings & Sons Publ. Co.* v. *City Treasurer of Lynn,* 374 Mass. 812, 818 (1978).

The sheriff further argues that, if he discloses the requested records, he may be exposed to liability under G. L. c. 214, § 1B, or G. L. c. 12, § 11I.[17] The concern, not supported by any evidence, is misplaced. General Laws c. 4, § 7, Twenty-sixth (*c*), which exempts from the definition of public records "materials or data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy," provides a broader protection against disclosure than does G. L. c. 214, § 1B. See *Pottle* v. *School Comm. of Braintree, supra* at 866-867 n.6.[18] Because subclause (*c*) does not bar inspection of records containing the names and addresses of individuals who serve as reserve deputy sheriffs, G. L. c. 214, § 1B, provides no alternative legal basis to resist inspection of the requested materials.

The sheriff's constitutional claim to the effect that the request for records "potentially invokes" protected privacy interests of the reserve deputy sheriffs is equally without merit. Any constitutional protection of individual privacy does not insulate the disclosure of the names and addresses of those who have applied to, and been appointed by, a public official, regardless of the scope of their subsequent responsibilities. See *Attorney*

---

[17]General Laws c. 214, § 1B, provides: "A person shall have a right against unreasonable, substantial or serious interference with his privacy." General Laws c. 12, § 11I, allows civil actions to redress violations of constitutional rights.

[18]Our holding does not implicate the privacy of law enforcement personnel who are protected by G. L. c. 66, § 10 (*d*): "The home address and home telephone number of law enforcement, judicial, prosecutorial, department of youth services, department of social services, department of correction and any other public safety and criminal justice system personnel shall not be public records . . . ." Here, according to the sheriff, the reserve deputy sheriffs exercise no law enforcement functions.

*Gen.* v. *Assistant Comm'r of the Real Prop. Dep't of Boston, supra* at 628 (constitutional privacy rights not implicated by disclosure of names and addresses). See also *Opinion of the Justices,* 423 Mass. 1201, 1235 (1996) (no known case in this court or in United States Supreme Court "where the constitutional right to privacy was found to have been violated by a governmental disclosure of information properly in its possession that the individual would rather not have disseminated").

The records requested by the newspaper are public records and must be made available for inspection and examination. The judgment is vacated. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*