445 Mass. 745 (2006)                                     745

The Harvard Crimson, Inc. *v.* President and Fellows of Harvard College.

The Harvard Crimson, Inc. *vs.* President and Fellows of
Harvard College & others.[1]

Middlesex. November 7, 2005. - January 13, 2006.

Present: Greaney, Ireland, Spina, Cowin, & Cordy, JJ.

*Public Records. Practice, Civil,* Motion to dismiss. *Statute,* Construction.
*State Police. Administrative Law,* Agency, Regulations. *Police,* Special
police officer. *Words,* "Public."

A Superior Court judge did not err in concluding that certain documents in the
custody of the police department (department) of Harvard University, a
private educational institution, did not constitute "public records" subject
to mandatory disclosure under the Massachusetts public records law, G. L.
c. 66, § 10, and the fact that some of the officers in the department had
been appointed deputy sheriffs or "special" State police officers under
G. L. c. 22C, § 63, did not transform the department itself into an agency
of the Commonwealth such that it became subject to the mandates of the
public records law. [748-755]

CIVIL ACTION commenced in the Superior Court Department on
July 29, 2003.

A motion to dismiss was heard by *Nancy Staffier*, J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Frances S. Cohen (Amber R. Anderson & Sarah R. Wunsch*
with her) for the plaintiff.

*Jeffrey Swope (Kara A. Krolikowski* with him) for the
defendants.

The following submitted briefs for amici curiae:

*Adam A. Rowe* for James K. Herms & another.

*Leonard M. Singer* for The Student Press Law Center &
others.

___

[1]Harvard University police department (HUPD), and the chief of police of
the HUPD.

SPINA, J. We consider in this case whether certain documents in the custody of the Harvard University police department (HUPD) constitute "public records" subject to mandatory disclosure under the Massachusetts public records law, G. L. c. 66, § 10. We conclude that they are not public records subject to such disclosure.[2]

The material facts are not in dispute. Harvard University is a private educational institution, and the HUPD provides campus security. Some officers of the HUPD have been appointed special State police officers pursuant to G. L. c. 22C, § 63, and some HUPD officers are deputy sheriffs in Middlesex and Suffolk counties. On June 2, 2003, the Harvard Crimson, Inc. (Crimson), a daily student newspaper, requested certain documents from the Cambridge police department and the HUPD, pursuant to G. L. c. 66, § 10. The Crimson subsequently made a request for documents from the Boston police department. It sought "all records, including but not limited to incident reports and correspondence, related to certain incidents listed on HUPD's weekly log of complaints." The HUPD denied the Crimson's request, asserting that it was not a public entity and, thus, was not required to comply with the mandates of § 10. Both the Cambridge and Boston police departments provided documents to the Crimson, including incident reports.

The Crimson brought an action for declaratory and injunctive relief against the President and Fellows of Harvard College, the HUPD, and the chief of police of the HUPD (collectively, Harvard), seeking disclosure of the requested documents in their custody. The complaint alleged that such documents were "public records" within the meaning of G. L. c. 4, § 7, Twenty-sixth, and were subject to mandatory disclosure under G. L. c. 66, § 10.

General Laws c. 66, § 10 (a), provides, in pertinent part:

---

[2]We acknowledge the amicus briefs filed in support of The Harvard Crimson by (1) the Student Press Law Center, the New England Press Association, the Society of Professional Journalists, the Associated Collegiate Press, The Heights, the Brown Daily Herald, and the National Police Accountability Project of the National Lawyers Guild; and (2) James K. Herms of the Student-Alumni Committee on Institutional Security Policy, and Security on Campus, Inc. .

> "Every person having custody of any public record, as defined in [G. L. c. 4, § 7, Twenty-sixth], shall, at reasonable times and without unreasonable delay, permit it, or any segregable portion of a record which is an independent public record, to be inspected and examined by any person, under his supervision, and shall furnish one copy thereof upon payment of a reasonable fee."

General Laws c. 4, § 7, Twenty-sixth, defines "public records" as:

> "[A]ll books, papers, maps, photographs, recorded tapes, financial statements, statistical tabulations, or other documentary materials or data, regardless of physical form or characteristics, made or received by any officer or employee of any agency, executive office, department, board, commission, bureau, division or authority of the commonwealth, or of any political subdivision thereof, or of any authority established by the general court to serve a public purpose, unless such materials or data fall within [certain specified] exemptions . . . ."

Harvard filed a motion to dismiss the Crimson's complaint pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), on the ground that, as a private educational institution, Harvard was not one of the instrumentalities of State or local government whose records were "public" within the meaning of G. L. c. 4, § 7, Twenty-sixth. A judge in the Superior Court agreed and granted Harvard's motion to dismiss, concluding that the mere fact that HUPD officers were authorized to perform certain functions by State and local police departments did not make them officers or employees of a governmental entity such that any documents they made or received were public records subject to mandatory disclosure under G. L. c. 66, § 10. Following the filing of the Crimson's notice of appeal, the case was transferred from the Appeals Court on our own motion.

The Crimson now contends that the judge erred in concluding that documents held in the custody of the HUPD did not fall within the scope of G. L. c. 66, § 10. It points out that the statutory language manifests a clear legislative intent to give the public broad access to government documents, subject only to

limited exemptions that are not pertinent here.[3] The Crimson argues that the appointment of some HUPD officers as special State police officers or deputy sheriffs vests them with broad police powers unique to public law enforcement agencies and, therefore, the HUPD is subject to the mandates of the public records law. Further, the Crimson asserts that it should be given the opportunity to develop a factual record to explore the scope of the authority exercised by HUPD officers and to demonstrate that such individuals are "officer[s] or employee[s]" of public entities under G. L. c. 4, § 7, Twenty-sixth. Because, as acknowledged by the Crimson, this case is one of statutory interpretation, the development of a factual record is unnecessary. We conclude that the judge did not err in determining that the documents sought by the Crimson from the HUPD were not "public records" subject to mandatory disclosure under G. L. c. 66, § 10.[4] The Crimson's complaint was properly dismissed.[5]

The purpose of rule 12 (b) (6) is to permit prompt resolution of a case where the allegations in the complaint clearly demonstrate that the plaintiff's claim is legally insufficient. See *General Motors Acceptance Corp.* v. *Abington Cas. Ins. Co.*, 413 Mass. 583, 584 (1992); *Fabrizio* v. *Quincy*, 9 Mass. App. Ct. 733, 734 (1980). In evaluating the allowance of a motion to

---

[3]The Legislature has identified fifteen categories of records otherwise public that are exempt from disclosure. See G. L. c. 4, § 7, Twenty-sixth. Harvard has not claimed that the requested documents fall within any of these exemptions.

[4]In its brief, the Crimson has noted that potential constitutional questions may arise if HUPD records are exempted from public disclosure. Because the Crimson did not raise this issue in its complaint or before the Superior Court, it has been waived. See *Salem* v. *Bureau of Special Educ. Appeals of the Dep't of Educ.*, 444 Mass. 476, 485-486 (2005); *Albert* v. *Municipal Court of the City of Boston*, 388 Mass. 491, 493-494 (1983).

[5]Harvard asserts that this case should be remanded to the Superior Court for entry of a binding declaration that documents in the custody of the HUPD are not subject to the public records law. See *Attorney Gen.* v. *Kenco Optics, Inc.*, 369 Mass. 412, 418 (1976) ("When an action for declaratory relief is properly brought and relief is denied on the merits, the action should not be dismissed," and rights of parties should be declared). However, dismissal of a complaint pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), does not constitute a decision on the merits, and therefore, declaratory judgment should not enter. See *Wallerstein* v. *Bar Examiners*, 414 Mass. 1008, 1009 (1993).

dismiss, we are guided by the familiar principle that a complaint is sufficient "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Nader* v. *Citron*, 372 Mass. 96, 98 (1977), quoting *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957). The allegations set forth in the complaint, as well as such reasonable inferences as may be drawn therefrom in the plaintiff's favor, are to be taken as true. See *Eyal* v. *Helen Broadcasting Corp.*, 411 Mass. 426, 429 (1991), and cases cited.

A fundamental principle of statutory interpretation "is that a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934). See *Sullivan* v. *Brookline*, 435 Mass. 353, 360 (2001). Courts must ascertain the intent of a statute from all its parts and from the subject matter to which it relates, and must interpret the statute so as to render the legislation effective, consonant with sound reason and common sense. See *Champigny* v. *Commonwealth*, 422 Mass. 249, 251 (1996); *Pentucket Manor Chronic Hosp., Inc.* v. *Rate Setting Comm'n*, 394 Mass. 233, 240 (1985); *Tilton* v. *Haverhill*, 311 Mass. 572, 577-578 (1942). A properly promulgated regulation is to be construed in the same manner as a statute. See *Purity Supreme, Inc.* v. *Attorney Gen.*, 380 Mass. 762, 769 (1980).

The primary purpose of G. L. c. 66, § 10, is to give the public broad access to government documents. See *Cape Cod Times* v. *Sheriff of Barnstable County*, 443 Mass. 587, 592 (2005); *General Elec. Co.* v. *Department of Envtl. Protection*, 429 Mass. 798, 802 (1999); *Globe Newspaper Co.* v. *Boston Retirement Bd.*, 388 Mass. 427, 436 (1983). To that end, disclosure is favored by a "presumption that the record sought is public." G. L. c. 66, § 10 (*c*). See *Bougas* v. *Chief of Police of Lexington*, 371 Mass. 59, 61 (1976) (documents presumed to be public records when possessed by public entity). See also *Matter of a Subpoena Duces Tecum*, ante 685, 687-688 (2006). Such

purpose, however, "should not be used as a means of disregarding the considered judgment of the Legislature that the public right of access should be restricted in certain circumstances." *Globe Newspaper Co.* v. *Boston Retirement Bd., supra.* See *Worcester Telegram & Gazette Corp.* v. *Chief of Police of Worcester,* 436 Mass. 378, 383 (2002).

General Laws c. 66, § 10, expressly limits that statute's reach to every person having custody of a "public record," as that term is defined in G. L. c. 4, § 7, Twenty-sixth.[6] That clause, in turn, provides that "[p]ublic records" are those "made or received by any officer or employee of any agency, executive office, department, board, commission, bureau, division or authority of the commonwealth, or of any political subdivision thereof, or of any authority established by the general court to serve a public purpose." G. L. c. 4, § 7, Twenty-sixth. See *Hull Mun. Lighting Plant* v. *Massachusetts Mun. Wholesale Elec. Co.,* 414 Mass. 609, 614 (1993). This court has construed strictly the scope of G. L. c. 4, § 7, Twenty-sixth, to preclude the public disclosure of documents held by entities other than those specifically delineated in the statute. See *Lambert* v. *Executive Director of the Judicial Nominating Council,* 425 Mass. 406, 409 (1997) (records of judicial nominating council not "public records" subject to disclosure where Governor is not "agency, executive office, department, board, commission, bureau, division or authority" of Commonwealth within explicit meaning of G. L. c. 4, § 7, Twenty-sixth); *Globe Newspaper Co.* v. *Massachusetts Bay Transp. Auth. Retirement Bd.,* 416 Mass. 1007, 1007 (1993) (records of retirement board not subject to public disclosure under G. L. c. 66, § 10, where such entity not "board" of Commonwealth under G. L. c. 4, § 7, Twenty-sixth); *Westinghouse Broadcasting Co.* v. *Sergeant-at-Arms of the Gen. Court,* 375 Mass. 179, 184 (1978) (telephone billing records of Legislature not "public records" subject to disclosure where Legislature not "agency, executive office, department, board,

---

[6]Although G. L. c. 66, § 10, requires disclosure by "[e]very person having custody of any public record," the parties agree that this phrase does not encompass every private individual holding a document that is a public record, such as a birth certificate or a marriage license. The Crimson does assert, however, that the disclosure requirement should apply to the HUPD, an entity exercising broad police powers.

commission, bureau, division or authority" of Commonwealth within meaning of G. L. c. 4, § 7, Twenty-sixth).

The Legislature has delegated authority to implement the provisions of G. L. c. 66 to the supervisor of public records (supervisor), who has enacted comprehensive regulations regarding the scope and application of the public records law. See G. L. c. 66, § 1; 950 Code Mass. Regs. §§ 32.00 (2003). See also *Globe Newspaper Co.* v. *Beacon Hill Architectural Comm'n*, 421 Mass. 570, 583 (1996), and cases cited ("An administrative agency has jurisdiction to establish regulations that bear a rational relation to the statutory purpose"). Such regulations are to "be construed to ensure the public prompt access to all public records in the custody of [S]tate governmental entities and in the custody of governmental entities of political subdivisions of the Commonwealth." 950 Code Mass. Regs. § 32.02. The regulations define "[p]ublic records" in the same manner as G. L. c. 4, § 7, Twenty-sixth. See 950 Code Mass. Regs. § 32.03. Further, a "[g]overnmental [e]ntity" is defined as "any authority established by the General Court to serve a public purpose, any department, office, commission, committee, council, board, division, bureau, or other agency within the Executive Branch of the Commonwealth, or within a political subdivision of the Commonwealth. It shall not include the legislature and the judiciary." *Id.*

The public records law, and its implementing regulations, are applicable to documents held by public entities, not private ones. Simply put, Harvard University is a private institution, a fact not challenged by the Crimson. See, e.g., *Rice* v. *President & Fellows of Harvard College*, 663 F.2d 336, 337-338 (1st Cir. 1981), cert. denied, 456 U.S. 928 (1982) (Harvard not public institution and not sufficiently intertwined with Commonwealth to meet "[S]tate action" requirement for 42 U.S.C. § 1983 claim); *Krohn* v. *Harvard Law Sch.*, 552 F.2d 21, 23 (1st Cir. 1977) (same). It follows, therefore, that records in the custody of the HUPD, a department within Harvard University, are not "public records" that fall within the ambit of G. L. c. 66, § 10.

Contrary to the Crimson's argument, documents in the custody of the HUPD do not become "public records" simply because some of the HUPD officers have been appointed

"special" State police officers under G. L. c. 22C, § 63. This statute provides that the colonel of the department of State police (colonel), at the request of an officer of an educational institution, may appoint employees of such institution as special State police officers. See G. L. c. 22C, § 63. The powers conferred on employees who are so appointed are, by statute, far less extensive than the powers of regular police officers, see G. L. c. 41, § 98, and they are vested in individual officers, not on the security department of the educational institution as a whole. "Such special [S]tate police officers shall serve for three years, subject to removal by the colonel, and they shall have the same power to make arrests as regular police officers for any criminal offense committed in or upon lands or structures owned, used or occupied" by such institution. G. L. c. 22C, § 63. Nothing in the language of § 63 suggests that individuals appointed as special State police officers are "officer[s] or employee[s]" of the department of State police. To the contrary, the statute requires that such individuals be employees of the educational institution or other specified entity. See *id.*

Regulations promulgated by the colonel pursuant to G. L. c. 22C, § 69, similarly specify that, to be eligible for appointment as a special State police officer, a person must be "an employee of an agency described in [G. L. c. 22C, §§ 56-68]." 515 Code Mass. Regs. § 5.04(1) (1996). The regulations define "[a]gency" to include any college or university authorized by those statutory sections to request the appointment of "certain employees of such agency as special [S]tate police officers." 515 Code Mass. Regs. § 5.03. When a special State police officer's employment with the educational institution ends, the officer's appointment under G. L. c. 22C, § 63, also terminates. See 515 Code Mass. Regs. § 5.04(9). All police powers of that special State police officer are rescinded by the department of State police. See *id.* That individual does not assume the status of a State police officer and does not become an "officer or employee" of the department of State police.

This court has recognized generally that privately employed security guards engage in functions that are different from those performed by ordinary police officers. Cf. *Commonwealth* v. *Leone*, 386 Mass. 329, 335 (1982). "General Laws c. 22C,

§ 63, does not confer upon campus security staff all the powers of a State police officer appointed pursuant to c. 22C, § 10." *Commonwealth* v. *Mullen,* 40 Mass. App. Ct. 404, 407 (1996). Contrast G. L. c. 41, § 99; *Commonwealth* v. *Callahan,* 428 Mass. 335, 337 (1998) (G. L. c. 41, § 99, is broad statute permitting Massachusetts cities and towns to requisition special police officers from other States who "shall have the authority of constables and police officers within the limits of such city or town, except as to the service of civil process"). The law enforcement authority conferred by G. L. c. 22C, § 63, on those individuals appointed thereunder, is statutorily limited to making arrests for criminal offenses committed on "lands or structures owned, used or occupied" by the educational institution. Pursuant to G. L. c. 22C, § 63, and its related regulations, a special State police officer simply is not treated as a member of the department of State police.

The Crimson's contention that documents in the custody of the HUPD have become "public records" because some HUPD officers have been appointed deputy sheriffs in Middlesex and Suffolk counties, thereby conferring on them the status of public employees, is equally unavailing. Pursuant to G. L. c. 37, § 3, a sheriff is vested with the discretion to appoint deputies who have general law enforcement powers and the right to serve process. See G. L. c. 37, §§ 11, 12. See also *Tedeschi* v. *Reardon,* 5 F. Supp. 2d 40, 42 n.3 (D. Mass. 1998); *Sheriff of Middlesex County* v. *International Bhd. of Correctional Officers, Local R1-193,* 62 Mass. App. Ct. 830, 831-832 (2005). A deputy sheriff has authority to take actions that a private person would not have in similar circumstances. A deputy sheriff may make warrantless arrests for misdemeanors, but only if the misdemeanor involves a breach of the peace, occurs in their presence or view, and continues at the time of arrest. See *Commonwealth* v. *Howe,* 405 Mass. 332, 334 (1989); *Commonwealth* v. *Grise,* 398 Mass. 247, 251-252 (1986). The fact that some individual HUPD officers have been appointed deputy sheriffs, or special State police officers, does not transform the HUPD, itself, into an agency of the Commonwealth such that it becomes subject to the mandates of the public records law.

The Crimson's efforts to establish a correlation between a

"special [S]tate employee" or "special county employee" for purposes of the Massachusetts conflict of interest statute, G. L. c. 268A, § 1, and an HUPD officer who has been appointed as a "special State police officer" or a deputy sheriff, is unpersuasive. "General Laws c. 268A regulates the conduct of State, county, and municipal employees relating to the performance of their official duties." *Edgartown* v. *State Ethics Comm'n*, 391 Mass. 83, 84 (1984). It was "enacted as part of 'comprehensive legislation . . . [to] strike at corruption in public office, inequality of treatment of citizens and the use of public office for private gain.' Report of the Special Commission on Code of Ethics, 1962 House Doc. No. 3650, [at] 18." *Everett Town Taxi, Inc.* v. *Aldermen of Everett*, 366 Mass. 534, 536 (1974). The conduct of public officials and employees under G. L. c. 268A simply has no bearing on whether the HUPD is required to disclose documents in its custody to the public pursuant to G. L. c. 66, § 10.

On a final note, we observe that many documents created and held by the HUPD are already available to the public. Pursuant to G. L. c. 41, § 98F, "each college or university to which officers have been appointed pursuant to the provisions of [G. L. c. 22C, § 63,] shall make, keep and maintain a daily log, written in a form that can be easily understood, recording, in chronological order, all responses to valid complaints received, crimes reported, the names [and] addresses of persons arrested and the charges against such persons arrested. All entries in said daily logs shall, unless otherwise provided by law, be public records,"[7] except where such entries pertain to specified handicapped individuals.[8] In addition, regulations promulgated by the colonel pursuant to G. L. c. 22C, § 69, specify that the person designated by a college or university to act as chief or

---

[7] In its complaint, the Crimson sets forth no information as to whether it has sought access to entries in the HUPD's daily logs.

[8] When G. L. c. 41, § 98F, was enacted in 1980, it only mandated that "[e]ach police department" make, keep, and maintain daily logs that would be available to the public. See St. 1980, c. 142. When the statute was amended in 1991, the Legislature expanded its purview to encompass "each college or university to which officers [had] been appointed pursuant to" what is now G. L. c. 22C, § 63. See St. 1991, c. 125. This amendment suggests that a campus security department that had appointed individual employees as special State police officers was not considered to be a "police department."

director of the special State police officers of that institution (the qualified officer) shall report detailed information to the department of State police, on a monthly basis, about each search or arrest warrant issued by a court of competent jurisdiction in response to the institution's submission of affidavits or sworn statements. See 515 Code Mass. Regs. § 5.07(1)(c) (1996). The qualified officer also shall submit to the department of State police, on a monthly basis, a report setting forth all felonies that have occurred within the jurisdiction of the college or university during the previous month. See 515 Code Mass. Regs. § 5.07(2). Once in the custody of the department of State police, a department within the Executive Office of Public Safety, see G. L. c. 6A, §§ 1, 2, 18, those reports would be available for public inspection.[9]

*Judgment affirmed.*

---

[9]As properly noted by Harvard, some investigatory materials are not available for public review, notwithstanding the fact that they are in the possession of governmental agencies. Under G. L. c. 4, § 7, Twenty-sixth (*f*), public records do not include "investigatory materials necessarily compiled out of the public view by law enforcement or other investigatory officials[,] the disclosure of which materials would probably so prejudice the possibility of effective law enforcement that such disclosure would not be in the public interest." These materials include "accounts of police investigatory efforts including the police officer's own observations of the incident in question, statements taken from witnesses, additional information obtained from other sources, some confidential, and leads and tips to be pursued." *Bougas* v. *Chief of Police of Lexington*, 371 Mass. 59, 62 (1976). The exemption set forth in G. L. c. 4, § 7, Twenty-sixth (*f*), applies to both open and closed investigations. See *id.* at 63. Contrast *Matter of a Subpoena Duces Tecum, ante* 685, 689-691 (2006).