Nickerson, Gary A., J.
Defendants Federal Home Loan Mortgage Company (“Freddie Mac”) and BAC Home Loans Servicing, Inc. (“BAC”) have moved to dismiss all counts of Plaintiff Karmle Conrad’s complaint pursuant to Mass.R.Civ.P. 12(b)(6). In addition, Harmon Law Offices, PC (“Harmon”) has moved to dismiss Counts I, VI, and VII, the three counts against it. With the exception of Count VIII (Negligent Misrepresentation) against BAC, the Motions to Dismiss are ALLOWED for the reasons discussed below.
FACTUAL AND PROCEDURAL BACKGROUND
Plaintiff Karmle Conrad obtained a mortgage loan from Countrywide Home Loans on November 11, 2004. Cmplt. ¶6. She executed a promissory note for $271,500, secured by a mortgage on the property at 31 Triangle Circle in Sandwich, Massachusetts, her primary residence. Id. at ¶¶1, 6. On September 11, 2008, Plaintiff signed a loan modification agreement with Countrywide. Id. at 114. She made payments in accordance with this modification for the next five months. Id. at 120. Plaintiff then became unable to afford these monthly payments, and defaulted from May through August 2008.
On March 18, 2009, Plaintiff was notified that the loan modification agreement was no longer effective as a result of her non-payment, and that the mortgage had been referred to BAC’s foreclosure department. Id. at 123. Later that month, Plaintiff was informed that Harmon Law had been retained to represent BAC in foreclosure proceedings. Id. at 125.
On April 1, 2009, Plaintiff was again notified that the loan modification agreement was invalid because she was delinquent on payments. Id. at 127. Consequently, Countrywide instructed her that a new loan modification agreement (the “Second Modification”) would be necessary to avoid foreclosure. Id. at 127. Plaintiff applied and was approved for the Second Modification in April 2009. Id. at 130. Payments under the Second Modification were $600 per month higher than under the initial modification. Id. Despite knowing she could not afford this monthly increase, Plaintiff agreed to the contract because she was concerned about the prospect of foreclosure. Id. at 131. On July 21, 2009, Plaintiff received notification from Harmon that a foreclosure sale was scheduled for August 20. Id. at 134. Three days later, Harmon confirmed that the contemplated sale had been cancelled. Id. at 135.
Plaintiff became unemployed in August 2009, and beginning in November, could no longer make payments under the Second Modification. Id. at 1136, 37. She attempted to remit the amount called for by the original agreement, rather than the Second Modification then in effect, but BAC declined those payments. Id. at 137.
Plaintiff next applied for a mortgage under the Home Affordable Mortgage Program (“HAMP”). Her application was denied in January 2011 due to “excessive forbearance,” as she had not made full payments during the 14-month period in which BAC was evaluating her eligibility. Id. at 148. On May 27, 2011, Plaintiff filed for Chapter 7 bankruptcy protection. Id. at 137. After her debts were discharged in bankruptcy on September 7, 2011, Plaintiff was notified that a foreclosure sale was scheduled for November 4, 2011. Id. at 1177, 78. Two days prior to the scheduled sale, Plaintiff filed a complaint in Superior Court to enjoin it. Id. at 177. She asserted additional claims against BAC for breach of contract, breach of the implied *604 covenant of good faith and fair dealing, promissory estoppel, violations of G.L.c. 93A and c. 93, §49 (Massachusetts’ debt collection statute), negligent misrepresentation, and negligent infliction of emotional distress. Additionally, Plaintiff sued Harmon for declaratory and injunctive relief, violations of c. 93, §49, and negligent infliction of emotional distress. Oral argument on Defendants’ Motions and Plaintiffs Oppositions was held on April 5, 2012.
DISCUSSION
In order to withstand a motion to dismiss, a complaint must contain “allegations plausibly suggesting (not merely consistent with) an entitlement to relief, in order to reflect the threshold requirement... that the plain statement possess enough heft to sho[w] that the pleader is entitled to relief.” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1966 (2007) (internal quotations omitted). While a complaint need not set forth detailed factual allegations, a plain tiff is required to present more than labels and conclusions, and must raise a right to relief “above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact).” Id.; See also Harvard Crimson, Inc. v. President & Fellows of Harvard Coll., 445 Mass. 745, 749 (2006).
A. Motion to Dismiss by Defendants Freddie Mac and BAC
As a threshold matter, Plaintiff lacks standing to pursue her claims against Freddie Mac and BAC. First, claims that arose prior to Plaintiffs Chapter 7 discharge remain property of the bankruptcy estate. See 11 U.S.C. §§554(c), (d). When Plaintiff filed her schedule of assets and liabilities with her bankruptcy petition, she indicated that she had no “contingent and unliquidated claims of any nature.” Exh. E, Schedule B. Therefore, Plaintiff is estopped from now attempting to litigate a claim against a creditor that she had failed to announce by scheduling it in accordance with 11 U.S.C. §521 (a)(1)(B)(ii). See Payless Wholesale Distribs., Inc. v. Alberto Culver (P.R.), Inc., 989 F.2d 570, 571 (1st Cir. 1993.) Further, because Plaintiff failed to put creditors on notice of this potential claim by scheduling it, the Bankruptcy Trustee had no option to abandon it. See 11 U.S.C. §554(d). Consequently, those claims remain properly of the estate, and Plaintiff lacks standing to pursue them.
Additionally, Plaintiff failed to enter a voluntaiy reaffirmation agreement with BAC regarding her mortgage debt. See 11 U.S.C. §524(c) (allowing a Chapter 7 debtor to reaffirm a pre-petition debt, otherwise dischargeable in bankruptcy, by agreeing to pay all or part of that debt). Absent reaffirmation, Plaintiff cannot continue to make pre-discharge contractual payments. Unscheduled claims made on the basis of that debt cannot survive Chapter 7 discharge. She is therefore estopped from bringing pre-petition claims after Chapter 7 proceedings have granted her the “fresh start” that is the “overriding goal of the bankruptcy code.” See Reynolds Bros., Inc. v. Texaco, Inc., 420 Mass. 115, 123 (1995). As a result, and for the additional independent reasons set forth below, Plaintiff s claims against BAC and Freddie Mac must be dismissed.
I Claims for Declaratory & Injunctive Relief against Freddie Mac and BAC (Count I)
Count I is the only claim asserted against Freddie Mac. However, Freddie Mac is not related to Plaintiffs claim that BAC breached its private loan modification agreement with her. Further, as to BAC, the propriety of the loan approval and foreclosure process could and should have been raised prior to the resolution of Plaintiffs Chapter 7 petition, or otherwise reserved by (1) scheduling these claims as an asset in the bankruptcy proceedings or (2) reaffirming the underlying debt.[2] Finally, there is no private right of action under HAMP. See Alpino v. JP Morgan Chase Bank, N.A., 2011 U.S. Dist. LEXIS 43210 at *7 (D.Mass. 2011) (collecting cases in which courts have found that mortgagors are not intended beneficiaries of the agreement between servicers or lenders and the U.S. Trea-suiy, and thus cannot sue on the basis of servicers or lenders’ alleged failures to consider mortgage modifications). Count I is therefore DISMISSED as against both Freddie Mac and BAC.
II Contractual Claims against BAC (Counts II, III & IV)
Plaintiff next asserts three contract-based claims against BAC: Count II for breach of contract, Count III for breach of the implied covenant of good faith and fair dealing, and Count IV for promissory estoppel. These claims arise from BAC’s alleged failure to recognize the terms of the initial modification agreement, and subsequent failure to modify Plaintiff s loan under HAMP.
First, Plaintiffs breach of contract claim must be dismissed because, notwithstanding the parties’ differing views on the validity of the initial loan modification agreement, BAC exercised its right to foreclose under the then-operative Second Modification. It is undisputed that the parties eventually agreed to and acted in reliance on the Second Modification.[3] Indeed, after receiving notice that her original attempt at modification was “invalid,” Plaintiff submitted an entirely separate loan modification application to Coun-tiywide in April 2009. Within a few weeks, BAC confirmed that the Second Modification was in effect. In her complaint, Plaintiff alleges that she knew she could not afford the rate called for by the Second Modification, but elected to be bound by it nonetheless.[4] From the time she accepted the modification in April 2009 through November 2009, when she could no longer afford to do so, Plaintiff made payments under the Second Modification. The acceptance and performance by both parties of a new, written contract governing the same debt trumps the attempted first *605 modification (which Plaintiff also knew the bank considered invalid). See Zlotnik v. McNamara, 301 Mass. 224, 226 (1938) (noting that a new contract covering the same subject matter may “operate as a discharge of the Original agreement”).
Secondly, Plaintiffs claim for breach of the implied covenant of good faith and fair dealing must also fail. A party cannot invoke an implied covenant to create rights or duties not otherwise provided for in the existing contractual relationship. Uno Restaurants, Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 385 (2004). Thus, Plaintiff cannot expand the terms of her loan agreement with Countrywide, BAC’s predecessor in interest, to require BAC to consider (much less approve) Plaintiffs desired contractual modifications. The wholly integrated Second Modification does not obligate BAC to modify the promissory note or mortgage to accommodate changes in Plaintiffs financial condition. Accordingly, its failure to do so cannot constitute a breach.
In Count IV, Plaintiff seeks to recover from BAC on a theory of promissory estoppel. Plaintiff alleges that, as a result of BAC’s original promise to modify her loan agreement, “she abstained from seeking options to refinance out of her existing mortgage loan and did not take any other action to avoid the threat of foreclosure on her home.” Cmplt. at ¶ 110. However, the Complaint indicates that Plaintiff became unable to make her monthly payments beginning in November 2009, as a result of losing her job in August. Id. at ¶¶36-37. Her inability to perform under the Second Modification followed from her unemployment, rather than any omission or misrepresentation by BAC. Indeed, Plaintiff acknowledges that she knew the payments under the second contract (which were $600 per month higher than the payments she was previously making) were unsustainably high, yet she agreed to the terms rather than seeking alternate refinancing options. Id. at ¶¶30-31. Further, from April through November, Plaintiff paid the higher installments and did not default under the Second Modification until approximately three months after losing her job. Id. at ¶31. The cause of Plaintiffs inability to pay — unemployment — was independent of BAC’s actions and representations. Further, despite Plaintiffs assertion that she “did not take any other action to avoid the threat of foreclosure on her home” as a result of her communications with BAC, the threat of foreclosure did not arise (nor could it have) until Plaintiff defaulted. Thus, she cannot prove that she reasonably relied to her detriment on BAC’s promises when changed conditions prompted BAC to later initiate foreclosure proceedings. Counts II, III and IV against BAC are therefore DISMISSED.
Ill Violation of c. 93A against BAC (Count V)
Plaintiff cannot advance her c. 93A claim because she failed to serve a demand letter at least 30 days prior to initiating this action, as required under the statute. See G.L.c. 93A, §9(3). Plaintiffs argument that her claim can survive because it is, “in practical terms, being asserted as a counterclaim against BAC to prevent it from proceeding with a wrongful foreclosure” cannot stand because Plaintiff failed to plead it defensively. See Opp. to Freddie Mac and BANA’s[5] Motion at 18. The Court declines to “constructively interpret her 93A action as a counterclaim,” as Plaintiff requests. See id. at 19. Though Plaintiff did not have 30 days between receiving notice of the foreclosure sale (October 6, 2011) and its scheduled date (November 4, 2011), she nonetheless failed to submit a demand letter to BAC until December 13, 2011— more than a month after the statutory 30-day demand period had run. Plaintiff had notice of her c. 93A claim well in advance of her demand letter, as she included a claim for unfair and deceptive business practices (Count V) in the instant lawsuit, which was filed 2 days before the scheduled sale (November 2, 2011) in an effort to enjoin it. It would be inequitable for Plaintiff to wait more than double the statutory period after becoming aware of the grounds for her claim to notify BAC of such. Thus, her late submission of the demand letter — a statutory prerequisite to the claim she asserted more than a month beforehand — cannot cure the defect in her pleadings. While Plaintiff had good reason to seek the initial Temporary Restraining Order to enjoin the foreclosure sale, it does not explain why she failed to send the required c. 93A notification to BAC until December 13, 2009. Count V is therefore DISMISSED.
IV Negligence Claims against BAC (Counts VI and VIII)
Count VI of Plaintiffs Complaint alleges negligent infliction of emotional distress. However, Plaintiff may not simply rest on “labels or conclusions” in her pleadings, but rather, must present “factual allegations suggesting (not merely consistent with) an entitlement to relief.” Iannacchino, 451 Mass. at 636. Here, Plaintiff has failed to allege how BAC’s actions were negligent under the circumstances. BAC is entitled to initiate foreclosure proceedings, with appropriate notice to the debtor, to collect the outstanding debt owed to it once the debtor has become delinquent on her payments. Accordingly, as Plaintiff has not alleged how BAC acted negligently, Count VI is DISMISSED as against BAC.
Count VIII alleges that BAC “supplied false information with respect to the modification of her mortgage loan.” Cmplt. at ¶ 132. BAC has moved to dismiss on the grounds that Plaintiff failed to plead this count with particularity. However, Plaintiff has simply alleged negligent, as opposed to fraudulent, misrepresentation. Consequently, Plaintiff is not held to a higher pleading standard. See Mass.R.Civ.P. 9(b) (requiring “circumstances constituting fraud" to be stated with particularity). Accordingly, the Motion to Dismiss Count VIII is DENIED.
*606 V. Violation of the Massachusetts Debt Collection Statute, G.L.c. 93, §49 against BAC (Count VII)
Finally, Plaintiff alleges that BAC attempt to collect a debt in an “unfair, deceptive, and unreasonable manner.” Cmplt. at ¶ 128. However, “(m)oney which is, or is alleged to be, owing as a result of a loan secured by a first mortgage on real property, or in an amount in excess of $25,000" is excluded from the definition of "debt" under G.L.c. 93, §49. See 940 C.M.R. 7:03; see also, Pettway v. Harmon Law Offices, 2005 U.S. Dist. LEXIS 21341 20 (D.Mass., Sept. 27, 2005) (finding that “mortgages are specifically excluded from the coverage of the statute”). Thus, because G.L.c. 93, §49 does not cover BAC’s alleged conduct, Count VII is DISMISSED.
B. Motion to Dismiss by Defendant Harmon Law Offices
The Court first notes that Plaintiff does not oppose Harmon’s Motion to Dismiss two of the three counts against it: Count I, seeking declaratory and injunctive relief, and Count VII, alleging a violation of G.L.c. 93, §49, Massachusetts’ debt collection statute. See Opp. to Harmon’s Motion at 1. Plaintiff is not entitled to declaratory or injunctive relief against Harmon, which holds no security interest in the property and, consequently, is not the entity seeking to foreclose. Accordingly, Count I is DISMISSED as against Harmon.
Next, Harmon cannot be liable to Plaintiff under G.L.c. 93, §49 for two independent reasons. First, money owing “as a result of a loan secured on a first mortgage on real property” does not qualify as a “debt” for the purposes of the Massachusetts debt collection statute and corresponding regulations. See 940 CMR §7.03. Secondly, Harmon does not meet the definition of “creditor” because “a person shall not be deemed to be engaged in collecting debt... if his activities are solely for the purpose of repossessing any collateral or property of the creditor securing such a debt.” Id. Indeed, Harmon holds no interest in the property, and Plaintiff does not allege otherwise. As Harmon simply communicated with Plaintiff on behalf of its client, rather than acting as a creditor in its own right, Count VII against it is DISMISSED.
Lastly, Plaintiff contends that Count VI (negligent infliction of emotional distress) should survive Harmon’s Motion to Dismiss. However, because Harmon owed no legal duty to Plaintiff, Count VI cannot stand. To state a claim for negligent infliction of emotional distress, Plaintiff must allege and prove: (1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomology; and (5) that a reasonable person would have suffered emotional distress under the circumstances. Payton v. Abbot Labs, 386 Mass. 540, 557 (1982). Here, Plaintiff will be unable to demonstrate negligence, the first element of this offense, because she cannot establish breach of a duty that did not exist. See Maciejewski v. Graton & Knight Co., 321 Mass. 165, 166 (1947) (“Negligence is a breach of some legal obligation, imposing the performance or omission of particular conduct. There can be no negligence where there is no duty”). At all times relevant to this lawsuit, Plaintiff stood directly adverse to the interests of Harmon’s client, BAC. Consequently, Harmon owed her no legal duty. Furthermore, Plaintiffs complaint simply alleges that Harmon sent letters communicating the dates of the foreclosure sales contemplated by its client. A law firm’s mere communication of its client’s position is not grounds for a claim of infliction of emotional distress. Count VI is therefore DISMISSED as against Harmon.
ORDER
For the foregoing reasons, it is hereby ORDERED that Defendants Federal Home Loan Mortgage Company and BAC Home Loans Servicing, Inc.’s Motion to Dismiss is DENIED as to Count VIII (Negligent Misrepresentation) and ALLOWED as to all other counts against them.
Defendant Harmon Law Offices’ Motion to Dismiss is ALLOWED as to Counts I, VI, and VII.

Chapter 111, Section 524 of the U.S. Bankruptcy code permits a Chapter 7 debtor to enter a voluntary reaffirmation agreement with the creditor(s) of a pre-petition debt otherwise dischargeable in bankruptcy. Pursuant to a reaffirmation agreement, the debtor retains the collateral and continues to make payments.

In a letter dated December 31, 2008, Countrywide confirmed that it had received and applied two payments in the amount of $1,343.59 apiece to Plaintiffs account. Plaintiff contends this letter evidences the validity of the first modification agreement, as she made payments in that amount for 5 months prior to discovering that Countrywide did not recognize the modification as valid. However, the correspondence did not reference whether $1,343.59 reflected a modified rate (as opposed to simply verifying receipt of a partial payment) or otherwise acknowledge that this sum constituted “payment in full.”

While Plaintiff repeatedly asserts that she was “compelled” to enter the Second Modification because she had been left with “no other way to avoid foreclosure,” she did not initiate a lawsuit at the time Countrywide allegedly breached the Initial modification agreement by declaring it “invalid.” Instead of seeking redress in the courts or working further with her loan servicer to resolve the discrepancy, she submitted a new application and committed to a payment schedule that she knew was not affordable for her.

Plaintiffs Opposition refers to Defendant BAC Home Loans Servicing, Inc., a division of Bank of America as BANA, rather than BAC.