SUPERIOR COURT 
 
 GUSTAVO GERMAN VS. LEE L. RUBIN & others [1] [#3]

 
 Docket:
 SUPERIOR COURT CIVIL ACTION NO. 16-01640
 
 
 Dates:
 July [blank], 2017
 
 
 Present:
 Elizabeth Fahey, Justice of the Superior Court
 
 
 County:
 MIDDLESEX
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS RUBIN AND PRESIDENT & FELLOWS OF HARVARD COLLEGE'S MOTIONS TO DISMISS
 
 

 INTRODUCTION 
Pursuant to Mass. R. Civ. P. 65.3, the pro se plaintiff, Gustavo German ("German") then a fifth-year doctoral candidate at Harvard, filed a Verified Complaint for Civil Contempt ("Complaint") on June 14, 2017. German previously obtained a harassment prevention order issued pursuant to G.L. c. 258E against Dr. Lee L. Rubin ("Rubin") on August 25, 2016, in which this court directed that German be fully restored to the position he occupied in Rubin's lab ("the Rubin Lab") as of March 10, 2016, before the harassment began. That order was amended on September 9, October 4 and14, and December 5, 2016, after repeated requests by defendants Rubin and President & Fellows of Harvard College ("Harvard," together with Rubin, "the defendants" )
German's Complaint alleges, generally, that the defendants violated several directives contained in the most recent Revised Order dated December 5, 2016 ("Order"), and as a result (1) 
--------------------------- 
[1] David Lopes Cardozo and President & Fellows of Harvard College 
1 
German has not yet been restored to the position he was in prior to the harassment, (2) he has been prevented from completing his research and thesis, and (3) he has now been forcibly withdrawn as a student.
Before the court are Rubin's and Harvard's separate motions to dismiss the Complaint. After hearing and careful review of the parties' submissions, both motions are ALLOWED in part and DENIED in part. 
PROCEDURAL HISTORY  
On August 25, 2016, German obtained a harassment prevention [2] order against Rubin following German's report of Rubin's research misconduct, i.e., his knowing publication of fabricated data. Rubin is a tenured professor at Harvard and the primary investigator ("P.I.") of the Rubin Lab, the facility in which German works while pursuing his Ph.D. The resulting August 25, 2016 harassment prevention order consisted of two directives. First, Rubin was to stay at least 100 feet away from German and have no contact, direct or indirect, with him. Second, German was "to immediately be fully restored to his position and research in the Rubin Lab with all the assistance, equipment, and supplies he had on March 10, 2016." See Paper No. 19, p. 27.
Both Rubin and Harvard filed motions seeking to vacate or modify the Order citing the impracticalities of implementation in both the academic and lab environments. See Paper Nos. 22, 31, 47, 51, 55, 62, 63, and 114. These motions led to several hearings before this court in the fall of 2016 and an interlocutory appeal, which resulted in some modification of the original 
--------------------------- 
[2] The harassment included, among other things, that German was forcibly seized and hospitalized for a mental health evaluation on June 4, 2016, based upon fabricated concerns about German's mental health that Rubin provided to Dr. Ayse A. Atasoylu, a physician from Harvard University Health Services. 
2 
August 25, 2016 Order. As the court stated in its October 17, 2016 Memorandum and Order, it "made substantial efforts to fashion an order that appropriately satisfied Defendant Rubin for the harm he caused Plaintiff and to restore Plaintiff as much as possible to the position he was in at the Rubin Lab. . . ." See Paper No. 58, p. 1. Throughout the parties' interactions with this court, this court's oft repeated goal remained clear and unchanged: to return German to the status quo he enjoyed as of March 10, 2016, and allow him to complete his research, thesis, and his Ph.D. [3]
The last Revised Order was issued on December 5, 2016, and states "[p]laintiff be immediately and fully restored to and remain in his position in the Rubin Lab, with all the assistance, equipment, and supplies he had on March 10, 2016" and that "Mr. German shall remain working in the Rubin Lab, supervised by the [sic] Dr. Rubin, though all physical meetings shall include a third party. . . ." It states, further "[w]ithin 48 hours, defendant Rubin is to release to Harvard . . . whatever funds are necessary to provide plaintiff with the same resources he had on March 10, 2016, i.e., two . . . research assistants he had been approved for and then had, and the S.M.A. mice . . . necessary for his research." It also directs that "[p]laintiff's key card access to the Rubin Lab is not to be disturbed or withdrawn and is to remain in full force and effect."
The Order also provides guidelines for the limited meetings between Rubin and German 
--------------------------- 
[3] See Paper No. 33 ("During the hearing on September 6, 2016, this court learned that plaintiff has not yet been fully restored to his position as of [sic] March 2016. Should that still be the case by September 16, 2016, the plaintiff may request a further hearing ... at which [Rubin] and Harvard will submit a pleading/affidavit as to what efforts have been made to fully restore plaintiff to the position he was in in March 2016 and why that has not yet occurred."); Paper No. 50 ("Until plaintiff has completed his research to his satisfaction, including a thesis he is willing to submit for publication, plaintiff is not to be transferred from the [lab] without plaintiff's consent or court order."); Id. ("Harvard agrees that it will work with German and do everything it can to be sure that he promptly has the necessary equipment for his research."); Paper No. 58 (Prior court orders were "issued to restore Plaintiff to a lab at Harvard where he had been banned by Harvard since June 6, 2016, so he may complete his research and achieve his Ph.D."). 
3 
that the parties previously explained were necessary. The Order states "all physical meetings shall include a third party, which shall be one of those listed by German, all of whom Harvard accepts and [Rubin] does not oppose. As no meeting between German and Rubin occurred between 10/14/16-11/30/16, their meetings are not to occur more than every six weeks, absent any emergency or good cause. Besides this physical contact in the presence of a third party, all other contact between German and Rubin shall be by email, text messages or Lab meetings as described above." 
BACKGROUND 
When deciding a motion to dismiss pursuant to Mass. R. Civ. P. 12(b)(6), the court reviews the motion in accordance with the principles articulated in lannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008). As such, the court accepts the allegations of the Complaint as true. Spinner v. Nutt, 417 Mass. 549, 550 (1985). German's Complaint alleges that Harvard and Rubin have violated the terms of the Order, as follows. 
I. Harvard's Alleged Conduct 
German alleges that Harvard took actions to contravene the Order's directive that German be "immediately" and "fully restored to and remain in his position and research in the Rubin lab .
. ," by (1) revoking his key card access to certain research facilities; (2) instituting administrative proceedings against German for failing to attend his Dissertation Advisory Committee ("DAC") meeting; and (3) withdrawing him as a graduate student at Harvard based upon the same refusal to attend the DAC meeting without leave of court. Compl., at pars. 42, 55, 62.
Concerning his academic suspension and withdrawal from the Ph.D. program, German 
4 
alleges the following. On March 2, 2017, German's program advisors requested that German hold a DAC meeting. Id. at par. 16. On March 3, 2017, German agreed to attend the DAC meeting scheduled for March 30, 2017, on the condition that Sheila Thomas, whom Harvard had designated as German's interim thesis advisor even though her field appears very different from German's, not attend as German believed the Order required Rubin to be his thesis advisor. Id. at par. 17. On March 6, 2017, the program administrators informed German "as a condition for the DAC meeting that German accept to have a new thesis advisor in Rubin's stead." Id. at par. 18. German rejected the condition and refused to attend the DAC meeting, stating it would violate the Order that he was to be "supervised by Dr. Rubin." Id. at par. 19. On March 10, 2017, German emailed his DAC, the program advisors, and Rubin (through counsel), objecting to the requirement that Rubin be replaced as his thesis advisor and expressing his concern that it violated the court's Order. Id. at par. 20. German further alleges that he was concerned that replacing his thesis advisor may have altered the already approved schedule for completing his research. Even if the new thesis advisor were not acting in bad faith, "he or she may have a different scientific understanding (or misunderstanding) than the one German agreed [to] with Rubin and his DAC." Id. at pars. 25-27.
In response, the defendants both denied that the court ordered Rubin to be German's
thesis advisor. Id. at par. 31. German alleges he was then threatened with administrative proceedings by Dean Garth McCavana if he would not agree to hold the DAC and replace his thesis advisor. Id. at par. 32. On March 30, 2017, German again emailed his program advisors and Dean McCavana stating his objection to holding the DAC meeting "to assign German a new thesis advisor" and his belief that doing so would violate the Order. Id. at pars. 31-32. 
5 
On April 6, 2017, Harvard, through Dean McCavana, initiated administrative proceedings against German and threatened him with academic probation. Id. at par. 34. On April 25, 2017, Harvard placed German on academic probation. Id. at par. 35.
On May 4, 2017, German filed an Emergency Motion for an Order Disallowing Lee L. Rubin and/or Any Employee at Harvard Corporation to Initiate Administrative Proceedings Against Plaintiff Unless Prior Leave is Granted by the Court. Id. at Par. 37. See Paper No. 105. On May 10, 2017, Harvard filed a written request for hearing with this court, requesting a hearing "at the earliest practicable time." See Paper No. 107.2. German alleges that Harvard's counsel intentionally did not call the clerk's office, as is customary, to schedule a hearing on an emergency basis. Compl. at pars. 39-41. No hearing was held on German's emergency motion until May 31, 2017.
On May 16, 2017, without waiting for the court to schedule a hearing on German's emergency motion, Harvard withdrew German from his graduate program and disaffiliated him from the university. Id. at par. 42. Once Harvard withdrew German from the program, it notified the Department of Homeland Security of German's disaffiliation, as German's legal presence in the United States is solely based on his student visa, which was rendered inoperable by Harvard's having withdrawn him. Although Harvard has invited German to reapply, Harvard and its faculty have told German that he is no longer a student at Harvard and have denied him access to the facilities he needs for his research, his mouse colony, and the animal testing facility. Id. at pars. 58, 59, 64, 68, 69, and 73. [4] 
--------------------------- 
[4] German also alleges that beginning on June 1, 2017, Harvard posted security guards at the Rubin Lab and that German was intimidated by the "extraordinary presence" of a security guard, who "turned his body to face German straight while staring at him until German looked away." Id. at pars. 50-51. As German does not allege how the presence of these guards violated the Order, or impaired his ability to do his research, he has not alleged sufficient facts to claim civil contempt for Harvard's use of security guards. However, such conduct appears very different than the "status quo" of March 10, 2016, to which this court has made frequent reference. 
6 
II. Rubin's Alleged Conduct 
German alleges that Rubin has failed to fully restore him to his position at the Rubin Lab or supervise his work, and as a result, he has been unable to continue and complete his research. Specifically, Rubin has held lab meetings without including German, as contemplated in the Order. Id. at par. 79. Rubin refuses to supervise German, act as German's "thesis advisor,” [5] and attend his DAC meetings. Id. at par. 78. Finally, Rubin has not released any of the funds he was ordered to release to Harvard "to provide plaintiff with the same resources he had on March 10, 2016." Id. at par. 77. 
III. Allegations against the Defendants Concerning Key Card Access 
German also alleges that Rubin has ignored German's requests to recover key card access and assistance, thus denying him access to the facilities he uses for his research. [6] Id. at par. 76. Since June 1, 2017, German has been denied access to the Biology Research Infrastructure ("BRI") facility at Harvard where he performs research on a highly specialized mouse colony. German has provided video of his key card being refused at that site. Since June 2, 2017, German has also been denied access to Rooms B03 and B07, which he states are "in the Rubin Lab," where he performs his research work. German has provided video of his key card being refused at those rooms. German further alleges that Rubin, as the head of his lab, "is the person 
--------------------------- 
[5] The parties have used the terms "thesis advisor," "academic advisor," and "dissertation supervisor" at various times in submissions and in court. This court treats these terms as interchangeable. This court is cognizant of the argument Rubin makes in his Motion to Dismiss distinguishing between his role "as the Primary Investigator at his lab" and his role as German's "thesis advisor." 
[6] To the best of this court's knowledge, at no time prior to December 5, 2016 was any mention made of the BRI or the Bauer Lab that German needs and had used to complete his research. It is undisputed that until Harvard "withdrew" plaintiff, he had access to Bauer, BRI and the Rubin Lab. Pursuant to this court's Order dated June 19, 2017, Harvard has restored German's access to the Bauer Lab in the Sherman-Fairfield building, in which the Rubin Lab is also located. 
7 
who has the right and sole discretion, by custom, to authorize anyone to receive key card access to the lab. ..." Id. at para. 76. [7] 
IV. Allegations against the Defendants Concerning Failure to Provide Research Assistants 
The Order provides that German was to be provided funding for the resources he had as of March 10, 2016, including "two (part-time 15-20 hours each) research assistants he had been approved for. ..." German alleges he has not been provided any research assistants over the ten months since the initial Order issued. German alleges that Rubin could comply with the Order by assigning time from the research assistants currently employed in his lab. Id. at par. 76. 
DISCUSSION 
I. Standard of Review 
The purpose of Mass. Rule Civ. P.12(b)(6) is to permit prompt resolution of a case where the allegations in the complaint clearly demonstrate that the plaintiff's claim is legally insufficient. The Harvard Crimson, Inc. v. President & Fellows of Harvard College, 445 Mass. 745, 748 (2006). Such a motion calls upon the court to determine whether the factual allegations of the complaint, taken as true, as well as all reasonable inferences drawn therefrom in favor of the claimant, are sufficient to warrant relief. See Marram v. Kobrick Offshore Fund Ltd., 442 Mass. 43, 45 (2004); Spinner, 417 Mass. at 550. Conclusory allegations without factual support are to be disregarded. See Quincy City Hosp. v. Labor Relations Comm'n, 400 Mass. 745, 750 (1987); Daddarie v. Cape Cod Comm'n, 56 Mass. App. Ct. 764, 773-774 (2002). 
--------------------------- 
[7] Following a show cause hearing on June 19, 2017, this court ordered that German's access be restored to the Sherman-Fairfield Building where the Rubin Lab is located, including the basement rooms B03 and B07, and the BRI (animal testing) facility so that he could continue his research despite his forced withdrawal from Harvard. Harvard's counsel reported in open court on June 26, 2017 that his access was restored, with the exception of the BRI facility, which is governed by an independent regulatory body over which Harvard has limited control. The issues surrounding access to the BRI facility are the subject of a pending Motion for Reconsideration by Harvard and are addressed in a separate decision. 
8 
A complaint need not, however, cite evidence in support of factual allegations; it need only give notice of the facts on which the claim is based. See Conley v. Gibson, 355 U.S. 41, 46-48 (1957); The Harvard Crimson, Inc., 445 Mass. at 748-749.
"To hold a party in contempt, 'there must be a clear and unequivocal command and an equally clear and undoubted disobedience."' Newell v. Department of Mental Retardation, 446 Mass. 286, 305 (2006), quoting Nickerson v. Dowd, 342 Mass. 462, 464 (1961). The order should be "sufficiently clear, so that the party to be bound is provided with adequate notice of the required or prohibited activity." Mohamad v. Kavlakian, 69 Mass. App. Ct. 261, 263 (2007), quoting Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 566 (1997). "Where the order is ambiguous or the disobedience is doubtful, there cannot be a finding of contempt." Judge Rotenburg Educ. Ctr. v. Commissioner of Dept. of Mental Retardation, 424 Mass. 430, 443 (1997).
German's Complaint contains several alleged violations of the Order by each party. This court addresses each alleged violation seriatim. 
II. Analysis 
a. Rubin's Failure to "Supervise" 
German asserts that Rubin has violated the Order by refusing to "supervise" him, including his refusal to fulfill his role as German's thesis advisor. The Order contains two provisions related to this allegation. First, it states that "[p]laintiff is to immediately be fully restored to and remain in his position and research in the Rubin Lab with all the assistance, equipment, and supplies he had on March 10, 2016." Second, it states that "German shall remain working in the Rubin Lab, supervised by the [sic] Dr. Rubin. ..." See Paper No. 19, p. 27. 
9 
Rubin argues that he is in full compliance with the court's Order. Rubin does not dispute that he has not supervised German nor served as his thesis advisor since the date of the Order, but claims the language of the Order absolves him of any such advisory role, or is at best ambiguous. See Paper No. 134.1, pp. 4-5.
It is not contested that prior to March 10, 2016, German was "supervised" by Rubin as a graduate student in the Rubin Lab. As Rubin has previously stated to this court, "[n]ormally, the [P.I.] of the lab in which a graduate student is pursuing research also serves as the student's dissertation advisor, directing the student's research and helping to determine when the student is ready to prepare and defend his or her dissertation." Fourth Aff. of Lee L. Rubin, Paper No. 126, at par. 7. In his first Affidavit, filed July 6, 2016, at paragraph 6 Rubin, under oath, stated: "I am the thesis advisor of each graduate student working in my lab. This means I must mentor the students and approve each thesis." In paragraph 7, Rubin stated: "As PI, I am responsible for approving, directing and supervising all of the work performed by members of the lab, . . ." Dr. William Lensch, Executive Director of the Harvard Stem Cell and Regenerative Biology ("HSCRB") stated on September 5, 2016, under the pains and penalties of perjury: "Under the federal rules and regulations governing the federal grants provided to the Rubin Lab, Dr. Rubin, as Principal Investigator, is personally responsible for supervising and directing all of the research conducted under those grants . . . . everyone performing research at the Rubin Lab reports (and is required to report) directly to Dr. Rubin." There is no dispute that, prior to the harassment, Rubin was the P.I. of the lab and German's supervisor and dissertation advisor. Despite arguments and proposals in the fall of 2016 by Harvard and Rubin seeking to have German's research moved to another lab under another supervisor, that did not work out. 
10 
Harvard then suggested on October 11, 2016, as a way to keep the Rubin lab open and functioning for both Rubin and German, that Rubin "supervise" German at the Rubin Lab. German and this court initially were hesitant but later agreed. This court in its December 5, 2016 Order, clearly stated that German was to be "supervised by [sic] Dr. Rubin" without further qualification, and to have all of the "assistance" with his "research" that was in place prior to March 10, 2016. No one then or later ever questioned the court of the meaning of "supervise," which language Harvard had specifically requested.
The Order makes no distinction between different categories of supervision, as Rubin argues. It makes a clear statement concerning German being restored to the same place "in his position and research" he was in as of March 10, 2016. That would necessarily include Rubin's required supervision of that research. The Order is also clear that German is to be "supervised by Dr. Rubin." Rubin's arguments that the Order, as written, obviates his prior role as German's supervisor and thesis advisor strains the limits of credulity. [8] Rubin now claims that he was only required to "supervise the lab," which this court never mentioned.
As the Order is clear as to Rubin's supervision of German and his research, German's allegations that Rubin has failed to supervise German, refused to participate as his thesis advisor, or even communicate with German since the Order, are sufficient to survive a Rule 12(b)(6) challenge. 
b. Rubin's Failure to "Release Funds" 
German alleges that Rubin has not released any of the funds he was ordered to release to 
--------------------------- 
[8] In his motion, Rubin cites to statements made by this court during hearings in May 2017. These transcript excerpts do not have any effect on what the Order clearly states. Furthermore, at the time of the hearing, this court did not have the benefit of recently reviewing the past submissions of the parties, as it has now had the chance to do. 
11 
Harvard "to provide plaintiff with the same resources he had on March 10, 2016." Rubin argues that it is undisputed that Harvard has made the financial resources available to German, negating his obligation to provide "necessary" funds. Rubin also argues that this issue was previously decided on a prior motion to dismiss an earlier contempt complaint in favor of Rubin.
This court finds that the issue has been previously decided and, in any event, Harvard has made clear its provision of funds for German's research assistants and research supplies (mice). As such, German's Complaint fails to state a claim for Rubin's failure to "release funds." 
c. Rubin's Failure to Invite German to Lab Meetings 
The Order was revised to permit Rubin to have contact with German at "Lab meetings." Rubin's opposition does not specifically address the allegations concerning "lab meetings." But, in his Fourth Affidavit at paragraph 18, Rubin admits that prior to German being restored to the Rubin Lab on August 25, 2016, Rubin "conducted periodic general lab meetings, during which all members of the Rubin Lab would meet to discuss their research with one another and with me." He states in paragraph 20 that since German was restored, he has not held any such meetings but has instead met either individually or "conducted project meetings. . . ." German alleges that Rubin has "mislabeled" the meetings he now holds with lab students and no longer holds meetings for all graduate students working in the Rubin Lab. While this court thinks it is
highly unlikely that Rubin has successfully operated his lab without any general lab meetings with his supervised graduate students and employees for the past seven months, the Order does not compel that such meetings be held. Further, German has not alleged facts that by not holding general lab meetings, Rubin has impacted German's research or his position in the Rubin Lab. For these reasons, the Complaint does not support a claim for contempt for failure to hold "lab 
12 
meetings." 
d. German's Denial of Access to Research Facilities 
German alleges that beginning on June 1, 2017, he was denied access to two rooms that he had previously used for his research at the Rubin Lab. German also alleges he has been denied access to the BRI animal testing facility where his mouse colony is kept. Rubin argues that he has no control over the granting or removal of key card access to Harvard facilities. Harvard argues that German's denial of access to certain Harvard facilities was a natural consequence of his withdrawal from the university, and that it has no authority to restore his access to the BRI facility.
It is uncontested that German's access to the two rooms, B03 and B07, has been restored pursuant to this court's June 19, 2017 Order. As a claim of civil contempt is "a remedy to compel compliance with a court order," Karellas v. Karellas, 54 Mass. App. Ct. 469, 473 (2002), and compliance, at least as to those two rooms, has been achieved, there is no longer any factual basis that can support a claim for contempt on those grounds. [9]
German remains unable to access the BRI where his mouse colony is kept, leaving him effectively stymied in his research. Harvard and Rubin each contend that Rubin has no control over key card access to Harvard facilities. German alleges that it is the P.I. of each lab who customarily controls who has access to lab facilities, and has supported this allegation with an affidavit. If true, Rubin may have had some affirmative obligation to use his authority to make sure German's access remained undisturbed, as the Order dictates. This court need not resolve 
--------------------------- 
[9] That Harvard required a second Order to effect the second lab access that German had on March 10, 2016 can be a factor in determining any punishment appropriate as to Harvard during the contempt trial. 
13 
what is a clear disputed issue of fact concerning the role of a P.I. in granting or revoking access to lab facilities in deciding a Rule 12 motion. This court finds that German's allegation that Rubin ignored his requests to restore access to all facilities used in his research may constitute a basis for contempt.
Harvard argues that it has limited control over access to the BRI facility. Federal law requires that the Institutional Animal Care and Use Committee ("IACUC") ensure Harvard's compliance with federal and local laws concerning animal testing. [10]
Notwithstanding the role of the IACUC, it is clear that the only reason German is being refused access to the BRI facility is because of Harvard's withdrawal of him as a graduate student for refusing to accept a different thesis advisor, one whose qualifications and competence to advise German remain unclear to this court. As explained to this court at the June 29, 2017 evidentiary hearing, only affiliated individuals (e.g., students, employees, visiting scholars) are permitted access to animal testing facilities under federal law. German's allegations support the reasonable inference that it was solely the withdrawal action of Harvard, which changed his status from "affiliated" to "unaffiliated," that caused the IACUC to revoke German's access.
The Order makes clear that German "is to immediately be fully restored to and remain in his position and research in the Rubin Lab with all of the assistance, equipment, and supplies" he previously had. Harvard's disaffiliation of German from the university has denied him the ability to continue his research, and removed German from the equipment and assistance to which he previously had access. This court finds that such facts are sufficient to state a claim for 
--------------------------- 
[10] This court conducted an evidentiary hearing on June 29, 2017, where Harvard offered the testimony of Dr. Ara Tahmassian, its Chief Research Compliance Officer, concerning the role of the IACUC. This court credits Dr. Tahmassian's testimony, but finds it only tangentially relevant to the issues presented in Harvard's motion to dismiss. Incredibly, one of Harvard's attorneys in its General Counsel's office advised the court at this hearing that, knowing of this court's December 5, 2016 Order, she sent notice to IACUC of Harvard's withdrawal of German. This court accepts that, when she did so, she knew that it would cause German to lose access to the BRI facility. 
14 
contempt. 
e. Harvard's Administrative Proceedings and Withdrawal of German 
German contends that Harvard violated the Order by instituting administrative proceedings against German for failure to attend his Dissertation Advisory Committee ("DAC") meeting, and subsequently withdrawing him as a graduate student at Harvard based upon the same refusal to attend a meeting of his DAC without leave of court. German also alleges that he informed Harvard that his only reason for not attending the meetings was Harvard's unilateral insistence that German change his academic or "thesis" advisor, and the potential negative effects that such a change would have on German. As a result, German claims he is precluded from completing his research or submitting it for publication, as he is not affiliated with any academic institution. In response, Harvard argues (a) that it was not subject to the Order until May 31, 2017, and the offending actions took place prior to that date, and (b) nothing in the Order absolved German from compliance with Harvard's internal rules concerning student discipline or academic achievement.
Harvard has been a participant in this case since September 6, 2016, one week after this court's original harassment order issued, stating that German was to be allowed to continue and complete his research and thesis. Harvard's contention that it was a non-party, unaware that it had obligations under the court's orders concerning German is untenable on this record. Regardless, Harvard is still bound by the orders because it (1) was a participant in the proceedings, making suggestions to achieve its goal of keeping the Rubin Lab open and German able to function there, (2) made express agreements to perform certain tasks that were codified in the orders, and (3) worked in concert with Rubin throughout this action to comply, or perhaps 
15 
avoid compliance, [11] with the court's original order, as amended.
This court is mindful of past decisions warning against court interference with academic and disciplinary decisions made by private colleges and universities. See Schaer v. Brandies Univ., 432 Mass. 474, 482 (2000); Russell v. Salve Regina Coll., 890 F.2d 484, 489 (1st Cir. 1989), rev'd on other grounds, 499 U.S. 225 (1991). Unfortunately, Harvard, by its actions, has left this court with little choice but to find its administrative withdrawal of German under these circumstances, as alleged, sufficient to state a violation of the Order.
The December 5, 2016 Order is clear and unequivocal that German was to be restored to
his research position so as to complete his research, thesis, and Ph.D. Such restoration necessarily includes the academic supervision he enjoyed prior to the harassment. Harvard's alleged insistence that it could unilaterally change German's thesis advisor is sufficient to state a violation of the clear language of the Order.
Given the history before this court, if changing German's academic advisor had become a
point of contention, it is concerning that Harvard did not petition this court to effectuate a change to the Order. The amount of time that past between Harvard's notice to German of possible administrative action (March 20, 2017) and its decision to withdraw him from the university (May 16, 2017), during which Harvard decided not to seek clarification from this court, is suspect. These facts, as well as German's allegation that Harvard's failure to seek a hearing before this court prior to acting to withdraw German was intentional, are sufficient to state a claim for violation of the Order.
There is little doubt that withdrawing German from Harvard violated the Order's 
--------------------------- 
[11] Notwithstanding this court's original Order, that German be immediately restored to the Rubin Lab, he did not get key card access for two months. 
16 
direction that he be "fully restored" and "remain in his position and research." If Harvard felt compelled to violate that portion of the Order, for cause, it had ample opportunity to seek review and modification of the Order by this court. Without such modification, however, the facts as pled may entitle German to relief for Harvard's violation of paragraphs 2 and 3 of the Order. 
f. Failure to Provide Research Assistants 
Concerning the failure to provide German with the research assistants described in the Order, Harvard claims that it hired a full-time research assistant for German, but German refused to meet with her to allow her to begin work. Id. at pp. 19-20. German claims he only did so as Harvard had imposed time constraints; why spend the time training an assistant if an unreasonably short period of employment is all that is permitted. Rubin argues that since Harvard agreed to make funds available to hire German a new research assistant, the Order's direction for him to release "necessary" funds to Harvard has not been triggered.
The portion in the Order pertaining to providing research assistants is linked to the Order for Rubin to "release ... whatever funds are necessary" to obtain for German the resources he had on March 10, 2016. This court finds it troubling that German has yet, ten months since the initial Order, to be provided with the described research assistants. All parties agree that Harvard has made those funds available; thus, as stated above, Rubin's obligation to release funds has not been triggered. Given the factual dispute between Harvard and German as to the reason no research assistance has been provided in the past ten months, this is an issue to be determined during the contempt trial. 
ORDER 
It is, therefore, ORDERED that both Rubin's Motion to Dismiss (Paper No. 134) and 
17 
Harvard's Motion to Dismiss (Paper No. 136) are ALLOWED in part and DENIED in part. As toGerman's claims for contempt for Rubin's failure to turn over funds, Rubin's failure to hold "lab meetings," Harvard's use of security guards, and Harvard and Rubin's alleged denial of access to Rooms B03 and B05, the motions are ALLOWED. As to the other alleged claims, that Rubin has failed to supervise German's research and dissertation, that Harvard's administrative proceedings and eventual withdrawal of German violated the Order, Harvard's failure to provide research assistants and that defendants have denied German access to resources and equipment needed for his research, the motions are DENIED.
The contempt trial remains scheduled for 2:00 P.M. on July 11, 2017, though witnesses need not be present.